IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn

Civil Action No. 18-cv-01047-REB

EDWARD GALVEZ,

    Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

    Defendant.

## ORDER AFFIRMING COMMISSIONER

**Blackburn, J.**

    The matter before me is plaintiff's **Complaint** [#1],[1] filed May 4, 2018, seeking review of the Commissioner's decision denying plaintiff's claim for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.* I have jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g). The matter has been fully briefed, obviating the need for oral argument. I affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

    Plaintiff alleges he is disabled as a result of multiple sclerosis, thoracic scoliosis, a seizure disorder, obesity, sleep apnea, mononeuritis, and depression. After his application for disability insurance benefits was denied, plaintiff requested a hearing before an administrative law judge. That hearing was held on March 8, 2017. At the time of this hearing, plaintiff was 48 years old. He has a high school education and

---

[1] "[#1]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

past relevant work experience as a composite shredder operator, customer service manager, surveyor helper, and street maintenance worker. He did not engage in substantial gainful activity between October 4, 2014, his alleged date of onset, and December 31, 2014, his date last insured.[2]

The ALJ found plaintiff was not disabled and therefore not entitled to disability insurance benefits. Although the evidence established plaintiff suffered from several severe impairments, the judge concluded the severity of those impairments did not meet or equal any impairment listed in the social security regulations. Other alleged impairments, most specifically obesity and depression, were found to be non-severe. The ALJ found plaintiff had the residual functional capacity to perform a reduced range of sedentary work with certain postural and environmental restrictions. Although that conclusion precluded plaintiff's past relevant work, the ALJ found there were other jobs existing in substantial numbers in the national and local economies he could perform. She therefore found plaintiff not disabled at step five of the sequential evaluation. Plaintiff appealed this decision to the Appeals Council. The Council affirmed. Plaintiff then filed this action in federal court.

---

[2] A claimant such as plaintiff (who is older than 31 at the alleged date of onset and not considered statutorily blind) must have at least 20 quarters of coverage within the 40 quarters prior to the date of disability to be entitled to disability insurance benefits. 20 C.F.R. § 404.130(b). The amount of wages and self-employment income a claimant must earn in order to qualify for a quarter of coverage is determined by a formula set forth in the regulations. *See* 42 U.S.C. § 413(a)(2); 20 C.F.R. § 404.143(a)(2). A claimant must have disability insured status during the quarter in which he allegedly became disabled, *see* 20 C.F.R. § 404.13, and must establish that he had a disability prior to his date last insured, 42 U.S.C. § 423(a)(1); **Townsend v. Chater**, 1996 WL 366207 at *1 (10th Cir. July 1, 1996); **Moore v. Berryhill**, 2018 WL 5784590 at *6 (D. Colo. Nov. 5, 2018).

## II. STANDARD OF REVIEW

A person is disabled within the meaning of the Social Security Act only if his physical and/or mental impairments preclude him from performing both his previous work and any other "substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2). "When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination." *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)). However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act. To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months. *See Kelley v. Chater,* 62 F.3d 335, 338 (10th Cir. 1995).

The Commissioner has established a quinquepartite sequential evaluation process for determining whether a claimant is disabled:

1. The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2. The ALJ must then determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities.

3. The ALJ must then determine if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations.

> 4. If the claimant's impairment does not meet or equal a listed impairment, the ALJ must determine whether the claimant can perform his past work despite any limitations.
>
> 5. If the claimant does not have the residual functional capacity to perform his past work, the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

20 C.F.R. § 404.1520(b)-(f). *See also Williams v. Bowen* 844 F.2d 748, 750-52 (10th Cir. 1988). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987). The burden then shifts to the Commissioner to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 801 (10th Cir. 1991).

Review of the Commissioner's disability decision is limited to determining whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence. *Hamilton v. Secretary of Health and Human Services*, 961 F.2d 1495, 1497-98 (10th Cir. 1992); *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. *Brown*, 912 F.2d at 1196. It requires more than a scintilla but less than a preponderance of the evidence. *Hedstrom v. Sullivan*, 783 F.Supp. 553, 556 (D. Colo. 1992). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."

*Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). Although a reviewing court should meticulously examine the record, it may not reweigh the evidence or substitute its discretion for that of the Commissioner. *Id.*

### III. LEGAL ANALYSIS

Plaintiff alleges the ALJ erred in (1) failing to consider the combined effect of all his impairments, both severe and non-severe, in assessing his residual functional capacity; (2) weighing the medical source opinions of record; and (3) discrediting his subjective reports of pain and functional limitation. Finding no reversible error in any of these particulars, I affirm.

At step two of the sequential evaluation, the ALJ found obesity and depression, *inter alia*, were not severe impairments. (Tr. 19-21.) Plaintiff maintains the ALJ's failure to further discuss these non-severe impairments in the context of her residual functional capacity assessment constitutes reversible error. *See* 20 C.F.R. § 404.1523(c) (ALJ must consider the combined effect of all impairments, both severe and non-severe, in assessing residual functional capacity).

I cannot agree. Of course, "a finding of non-severity alone would not support a decision to prepare an RFC assessment omitting any [non-severe] restriction." *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013). However, the ALJ acknowledged her responsibility to consider the combined impact of all plaintiff's impairments (Tr. 18), an assertion this court credits when the record provides no reason to doubt it, *see Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005); *Manning v. Colvin*, 182 F.Supp.3d

5

1156, 1164 (D. Colo. 2016). Here, although the ALJ's discussion of the impact of these non-severe impairments could have been more thorough-going, I cannot say any error in that regard merits remand. Because the opinion as a whole substantiates the ALJ's decision to omit additional functional limitations associated with these non-severe impairments from her residual functional capacity assessment, s*ee Best-Willie v. Colvin*, 514 Fed. Appx. 728, 733 (10th Cir. March 26, 2013), the ALJ's failure to more specifically address them ultimately was harmless, *see Williams v. Chater*, 1995 WL 490280 at *2 (10th Cir. Aug.16, 1995); *Lumpkin v. Colvin*, 112 F.Supp.3d 1169, 1174 (D. Colo. 2015).

With respect to the ALJ's consideration of obesity,[3] "there is no requirement that [obesity] be discussed in a particular manner or at a particular time in a disability decision[;] the ALJ is required only to consider it." *Medina v. Berryhill*, 2017 WL 1862279 at *10 (D. Colo. May 8, 2017) (citation and internal quotation marks omitted). At step two of the sequential evaluation, the ALJ acknowledged plaintiff was overweight, with a very high Body Mass Index. However, she noted plaintiff was described as "very muscular and stocky" despite his weight. (*See* Tr. 270.) She also pointed out that despite his weight, plaintiff's physical examinations were consistently normal and that he rarely reported problems or complaints of any kind, whether related to his weight or otherwise. (*See* Tr. 19-20.) Although thereafter she did not discuss obesity in particular, the ALJ repeatedly referenced these same normal physical

---

[3] Although no longer a separately listed impairment, obesity still must be considered insofar as it impacts other impairments of the musculoskeletal, respiratory, and cardiovascular systems. **See Social Security Ruling** 02-1p, 2000 WL 34686281 at *1 (SSA Sept. 12, 2002).

examination findings throughout her step four residual functional capacity assessment. (Tr. 24-27.)

Thus, what is notable about plaintiff's obesity is the utter lack of any evidence that it imposed functional restrictions beyond those assessed by the ALJ. Plaintiff himself points to no evidence suggesting otherwise. The Tenth Circuit has rejected any suggestion that "in formulating [a residual functional capacity] . . . [the ALJ is] also required to note the absence of any evidence that [plaintiff's] obesity resulted in additional functional limitations or exacerbated any other impairment," **Smith v. Colvin**, 625 Fed. Appx. 896, 899 (10th Cir. Sept. 14, 2015), and in similar circumstances, courts in this circuit routinely have refused to remand, *see id.*; **Rose v. Colvin**, 634 Fed. Appx. 632, 637 (10th Cir. Dec. 14, 2015); **Gonzales v. Berryhill**, 2018 WL 1136073 at *9 (D.N.M. Feb. 26, 2018); **Medina**, 2017 WL 1862279 at *10. **See also Munoz v. Colvin**, 2014 WL 12796775 at *9 (D.N.M. March 11, 2014) (citing cases). I thus cannot find any reversible error in this regard.

As for consideration of plaintiff's depression, plaintiff cites the Tenth Circuit's opinion in **Wells v. Colvin**, 727 F.3d 1061 (10th Cir. 2013), for the proposition that "even if the ALJ determines that a claimant's medically determinable mental impairments are 'not severe,' he must further consider and *discuss* them as part of his residual functional capacity (RFC) analysis at step four." *Id.* at 1064 (emphasis added). However, plaintiff elides that the issue before the court was "*how much* further discussion of a non-severe impairment is required at step four?" *Id.* (emphasis added). In analyzing that question, the court noted that although "a conclusion that the

7

claimant's mental impairments are non-severe at step two does not permit the ALJ simply to disregard those impairments when assessing a claimant's RFC and making conclusions at steps four and five," the ALJ's subsequent discussion of the plaintiff's mental impairments in assessing her credibility, "though far from comprehensive," might have been sufficient to satisfy this duty but for the fact that his conclusions in that regard were not supported by substantial evidence. *Id.* at 1068-69.

Thus, *Wells* is not nearly as compelling on this point as plaintiff implies. The decision certainly does not support a contention that the ALJ must discuss a plaintiff's mental impairments specifically in connection with her residual functional capacity assessment, and nothing in the regulations provides otherwise.[4] *See Manning*, 182 F.Supp.3d at 1164 ("[W]hile the regulations obligate the ALJ to *consider* whether a claimant's severe and non-severe impairments in combination are severe, they do not require her to specifically *address* all such factors.") (internal citations omitted; emphases in original). Instead, it seems clear the *Wells* court would have found the ALJ complied with his duty to consider all impairments in combination if his disability determination had otherwise been supportable. *See Wells*, 727 F.3d at 1069. Coupled with the fact that the ALJ's findings at steps two and three of the sequential evaluation need not necessarily be translated into work-related functional limitations at step four, *see Vigil v. Colvin*, 805 F.3d 1199, 1203 (10th Cir. 2015); *Manning*, 182 F.Supp.3d 1164, *Wells* does not exempt this situation from the realm of harmless error analysis.

---

[4] Social Security Ruling 96-8p, 1996 WL 374184 (SSA July 2, 1996), is not to the contrary. The narrative contemplated by that interpretive ruling requires only that in making her residual functional capacity assessment, the ALJ provide "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* at *7. Whether that discussion must include any particular reference to non-severe impairments is not addressed by the ruling.

8

Applying that rubric here, the ALJ's ultimate determination of plaintiff's mental functional capacity is eminently substantiated in this case. Her discussion of the medical evidence showed that plaintiff received minimal treatment for depreseeion and that his medications were effective in treating it. (Tr. 20, 68-69, 392.) *See Pacheco v. Sullivan*, 931 F.2d 695, 698 (10th Cir. 1991) (condition which can be controlled or mitigated by treatment is not disabling); *Manning*, 182 F.Supp.3d at 1161 (same). Plaintiff's mental status was regularly assessed as normal (*see, e.g.*, Tr. 272, 319, 394), and he continued to work despite his depression for at least five years after his initial diagnosis in 2009, *see* 20 C.F.R. § 404.1520(b) (claimant who is performing substantial gainful activity is not disabled regardless of medical condition, age, education, or work experience); *Arguello v. Berryhill*, 2017 WL 514058 at *6 (D. Colo. Feb. 8, 2017). Plaintiff points to nothing in the record which would suggest additional functional limitations related to his depression. Accordingly, remand is not warranted on this basis.

Plaintiff next faults the ALJ for her alleged failure to properly evaluate the medical source opinions of record. Plaintiff was diagnosed with multiple sclerosis (MS) in 2007. (*See* Tr. 43-44, 288, 315.) This condition was largely untreated, as plaintiff declined interferon infusions and refused to try other, newer drugs.[5] (*See* Tr. 43, 288, 307.) Nevertheless, Dr. Richard Gamuac, a neurologist who began treating plaintiff in

---

[5] Plaintiff was prescribed Levetiracetam, known by the brand name Keppra, an anti-convulsant, to treat seizures, just a few weeks prior to his date last insured. (Tr. 288-289.) (*See* WebMD, Drugs & Medications, **Levetiracetam Tablet For Suspension** (available at: https://www.webmd.com/drugs/2/drug-17855-1750/levetiracetam-oral/levetiracetam-tablet-for-oral-suspension/details) (last accessed May 9, 2019).) Six weeks later, although noting some more recent fatigue, plaintiff reported "not feeling as foggy during the day." (Tr. 286.) Six months afterward, the dosage of this medication was increased after plaintiff reported issues with emotional control and disinhibition. (Tr. 341-342.) At his next appointment, he said the increased dosage "seems to be working well." (Tr. 339.)

December 2014, just prior to plaintiff's date last insured, submitted a letter in July 2015 (seven months after the date last insured) opining that plaintiff "would not be able to maintain gainful employment" due to "extreme fatigue," and would need to elevate his legs, take "many breaks throughout the day," and miss work "several days of each month." (Tr. 362.) Similarly, Dr. Robert Bliss, who became plaintiff's primary care physician in April 2015 (four months after his date last insured), suggested in January 2017 (more than two years past plaintiff's date last insured) that plaintiff could sit or stand for no more than two hours in an eight-hour day, lift ten pounds or less frequently, and would be absent "Waaay more"[6] than four days per month, among other substantial functional limitations. (Tr. 420-424.)

The opinion of a treating source is entitled to controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record." 20 C.F.R. § 404.1527(c)(2); *see also Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). A treating source opinion cannot be rejected absent good cause for specific and legitimate reasons clearly articulated in the hearing decision. *Watkins*, 350 F.3d at 1301. Good cause may be found where the treating source's opinion is brief, conclusory, or unsupported by the medical evidence. *Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir. 1987). The ALJ gave "little weight" to either of these treating source opinions because she found them inconsistent with the doctors' own largely

---

[6] As the ALJ noted, it appears as if at least two people entered information on this form. (*See* Tr. 420-424.) At the hearing, counsel for plaintiff acknowledged plaintiff's wife and a nurse filled out the form, which Dr. Bliss then signed. (Tr. 26, 38-39.)

unremarkable physical examination findings, plaintiff's consistent reports that he generally was doing well, and that evidence showing plaintiff's symptoms improved with medication. (Tr. 26-27.)

Plaintiff protests this finding takes inadequate consideration of the doctors' assessment of the effect of fatigue on his functional capacity. Although plaintiff cites various sources confirming that fatigue is a common symptom of MS, he fails to acknowledge that the record in this case shows he rarely reported fatigue, let alone extreme fatigue, to his treating doctors during or reasonably near the time of his alleged period of disability. Although plaintiff said he was suffering from fatigue when he first established care with Dr. Gamuac in September 2014, six weeks prior to his alleged date of onset (Tr. 292), he did not complain of fatigue at all during his subsequent two visits to, the only two which occurred during his alleged period of disability. (*See* Tr. 288-291.)[7] Moreover, and despite reporting a number of other symptoms, he did not complain of fatigue to Dr. Gamuac at all from July to August 2015. (Tr. 330-341.) Likewise, when plaintiff first saw Dr. Bliss, he reported that, aside from "minor motor seizures," he had "no problems or any complaints [] that need[ed] attention." (Tr. 307, 351.) Between that visit, in April 2015, and September 2016, plaintiff complained to Dr. Bliss of fatigue only once. (Tr. 350; *cf.* Tr. 346, 348-349.)

Moreover, as the ALJ set forth, despite all plaintiff's various symptoms, including fatigue, he consistently had normal physical examinations. Dr. Gamuac regularly

---

[7] One month after his date last insured, although plaintiff said he had been "more tired than normal" over the prior week and a half, he reportedly felt "less foggy" since starting Keppra. (Tr. 286.)

reported plaintiff to be alert and oriented, with normal motor strength and sensation in both upper and lower extremities, no joint pain or swelling, and a steady gait. (*See* Tr. 286-293, 331, 333, 335, 337.) Dr. Bliss's notes show plaintiff routinely said he was "doing well," had "[n]o other complaints" and/or "desire[d] no other care at this time." (*See* Tr. 345, 348, 349.) [8]

      Thus, even granting that Drs. Gamuac and Bliss would know that a patient suffering from MS could be expected to experience disabling fatigue, it is not apparent that such conclusions were based on their assessment of the objective medical signs and symptoms reported in their own treatment notes. This is an appropriate consideration in the weighing of medical source opinions, *see* 20 C.F.R. § 404.1527(c)(3), and one on which the ALJ here relied (Tr. 26-27). Although plaintiff suggests his doctors plainly credited his subjective manifestations of fatigue, the ALJ was not required to do likewise wehn her own estimation of the plaintiff's credibility (discussed in more depth *infra*) is to the contrary. **Manning**, 182 F.Supp.3d at 1162 ("[W]hen the ALJ has properly discredited a claimant's subjective complaints of pain, he need not accept a medical source opinion premised on a contrary estimation of the claimant's credibility regarding her own functional and other limitations.") (citation and internal quotation marks omitted). The ALJ therefore did not err in discounting these opinions.

---

[8] Dr. Bliss's notes appear to be mere summaries of the reasons for and results of plaintiff's visits, with nothing to suggest the doctor undertook any physical examination of plaintiff during those visits. (*See* Tr. 345-351.)

The ALJ gave "some weight" to the opinion of the consultative examiner, Dr. Robert Maisel, who suggested a variety of limitations, most of which the ALJ adopted. (Tr. 319-320.) However, the ALJ did not adopt Dr. Maisel's recommendation that plaintiff would need to change positions frequently while sitting. Although plaintiff argues the vocational expert testified at the hearing that this limitation would eliminate all the alternative jobs identified at step five, that was not his testimony. Instead, the expert said such jobs would be eliminated "[i]f someone's constantly switching between sitting, standing, and walking every 15 minutes[.]" (Tr. 60.) While Dr. Maisel suggested plaintiff would be unable to *stand* for more than fifteen minutes at a time, his opinion that plaintiff must change position *while sitting* is not equivalent to a determination that he would need to alternate between sitting, standing, and walking at regular intervals. (*See* Tr. 319.)[9]

Even if Dr. Maisel's opinion could be interpreted in the way plaintiff suggests, however, I cannot find the ALJ erred in failing to adopt this aspect of his opinion. Here again, and as discussed fully above, the largely normal physical examination findings and responsiveness of plaintiff's condition to medication are more than adequate to support the ALJ's decision not to include such limitations in plaintiff's residual functional capacity. Indeed, Dr. Maisel's own examination showed plaintiff was able to sit and stand without difficulty, walk normally and without pain, had full strength in his upper and lower extremities, and overall showed "no significant deficits or abnormalities" apart from "moderate obesity." (Tr. 318-219.)

---

[9] In fact, the vocational expert testified that a restriction to standing for no more than fifteen minutes would not eliminate the alternative jobs. (Tr. 58-59.)

13

Nor did the ALJ impermissibly substitute her own lay opinion for the medical opinion of Dr. Maisel, as plaintiff contends. **See Hamlin v. Barnhart**, 365 F.3d 1208, 1221 (10th Cir. 2004). The ALJ was not purporting to assert a medical opinion but to craft a residual functional capacity assessment, which is not a medical determination but an administrative one, and thus reserved to the Commissioner. 20 C.F.R. § 404.1546(c); **Lumpkin**, 112 F.Supp.3d at 1173. The ALJ here merely evaluated Dr. Maisel's opinion in the context of the record as a whole, which is entirely within her legitimate purview. **See Lopez v. Barnhart**, 183 Fed. Appx. 825, 829 (10th Cir. June 13, 2006). **See also** 20 C.F.R. § 404.1527(c)(3) (supportability of medical source opinion proper consideration in determining weight it should be given). In short, no reversible error occurred in this regard.

Lastly, plaintiff maintains the ALJ erred in discrediting his subjective complaints of pain and functional limitation. In general, "credibility determinations 'are peculiarly the province of the finder of fact, and should not be upset if supported by substantial evidence." **White v. Barnhart**, 287 F.3d 903, 909 (10th Cir. 2001) (citing **Kepler v. Chater**, 68 F.3d 387, 390-91 (10th Cir. 1995)). So long as the ALJ expressly links her credibility assessment to specific evidence in the record, her conclusion should not be disturbed. **Id.** at 910; **see also Qualls v. Apfel**, 206 F.3d 1368, 1372 (10th Cir. 2000).

Such is the case here. Although plaintiff suggests the ALJ improperly relied on his activities of daily living in making this determination (Plf. Br. at 10), her credibility finding instead was based on the well-substantiated conclusions, discussed previously, that plaintiff's complaints did not square with the mostly benign physical findings and

the evidence that plaintiff's medications were efficacious. (Tr. 24.) His arguments therefore are inapposite.[10]

The court is fully aware that MS is a progressive disease, *see Moomy v. Colvin*, 106 F.Supp.2d 1222, 1226 (D. Colo. 2015), and indeed, the evidence in this case could well be viewed as showing plaintiff's condition has deteriorated in more recent years. Nevertheless, the issue before the ALJ was an exceedingly narrow one, focused solely on the brief window in the last two months of 2014 between when plaintiff stopped working entirely and when his eligibility for disability benefits expired. Yet even considering, appropriately, evidence prior to and within a reasonable time after that period, *see White v. Berryhill*, 704 Fed. Appx 774, 779 (10th Cir. Oct. 4, 2017); *Moore v. Berryhill*, 2018 WL 5784590 at *6 (D. Colo. Nov. 5, 2018), the record fully supports the ALJ's disability determination here.

## IV. ORDERS

For these reasons, I find no reversible error in the ALJ's disability determination, which accordingly must be affirmed.

**THEREFORE IT IS ORDERED** that the conclusion of the Commissioner through the Administrative Law Judge that plaintiff was not disabled is affirmed.

Dated May 14, 2019, at Denver, Colorado.

BY THE COURT:

Bob Blackburn
Robert E. Blackburn
United States District Judge

---

[10] Even if they were not, a plaintiff's activities of daily living "do bear on a plaintiff's credibility to the extent that the level of activity is in fact inconsistent with the claimed limitations." *Deegan v. Colvin*, 2013 WL 1827747 at *5 (D. Colo. April 30, 2013) (citations and internal quotation marks omitted).